**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MARIANA BALDERRAMA** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **3:25-cv-00214-KC** |
| **DEPLOYED SERVICES, LLC,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**DEFENDANT DEPLOYED SERVICES, LLC'S APPENDIX
IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER
AND TO STAY ALL DISCOVERY AND PRETRIAL DEADLINES**

In support of its Motion for Protective Order and to Stay all Discovery and Pretrial Deadlines Pending a Ruling on Its Motion to Compel Arbitration and Request for Expedited Consideration, Defendant Deployed Services, LLC submits this appendix consisting of the following materials:

| APPENDIX | | |
|---|---|---|
| **Exhibit No.** | **Document Description** | **Page(s)** |
| A | Plaintiff's Rule 34(b) Request for Production of Electronically Stored Information in Native Electronic Formats, Documents and Tangible Things to Defendant; Interrogatories; and Notice of Required Disclosures<br><br>Notice of 30(b)(6) Deposition and Subpoena, Requests for Production, and Interrogatories | APP 001-035 |
| B | Opinion Granting Motion to Stay Discovery, *Apodaca v. SCI Texas Funeral Services, LLC*, 3:25-cv-00050-KC (August 18, 2025) | APP 036-039 |

1

October 23, 2025

Respectfully submitted,

By: */s/ Jennifer M. Trulock*
**JENNIFER M. TRULOCK**
Texas Bar No. 90001515
jtrulock@bradley.com
**LEANNE K. THORESON**
Texas Bar No. 24065695
lthoreson@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone: (214) 257-9800
Facsimile: (214) 939-8787

**ATTORNEYS FOR DEFENDANT DEPLOYED SERVICES, LLC**

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of October 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will serve a true and correct copy on all counsel of record.

*/s/ Jennifer M. Trulock*
Jennifer M. Trulock

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURTS FOR
THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

Mariana Balderrama,
      Plaintiff,

v.                                  Cause No. 3:25-cv-00214-KC

Deployed Services, LLC,
      Defendant.

**PLAINTIFF'S RULE 34(b) REQUEST FOR PRODUCTION OF ELECTRONICALLY
STORED INFORMATION IN NATIVE ELECTRONIC FORMATS, DOCUMENTS AND
TANGIBLE THINGS TO DEFENDANT; INTERROGATORIES; AND NOTICE OF
REQUIRED DISCLOSURES**

TO:    Deployed Services, LLC.

You are requested to respond, answer and produce, accordingly, responsive answers and electronically stored information and documents to these discovery requests to the Chavez Law Firm, 2101 N. Stanton Street, El Paso, Texas 79902. no later than thirty (30) days from the date of your receipt.

**SIGNED** on September 29, 2025.

                    Respectfully submitted,

                    **Chavez Law Firm**
                    2101 N. Stanton Street
                    El Paso, Texas 79902
                    915/351-7772

              By:    _/s/Michael M. Osterberg _____
                    Michael M. Osterberg, TX Bar No. 24001873
                    mikeosterberg@chavezlawpc.com
                    Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

On September 29, 2025, I certify that the foregoing instrument was served on the following attorneys of record by electronic means:

Bradley Arant Boult Cummings LLP
1445 Ross Avenue Suite 3600,
Dallas, Texas 75202
214-257-9827,
fax 214-939-8787
Jennifer M. Trulock jtrulock@bradley.com
Leanne K. Thoreson lthoreson@bradley.com
*Attorneys for Defendant Deployed Services, LLC*

_/s/Michael M. Osterberg _____
Michael M. Osterberg

## **Federal Rule of Civil Procedure 34(b) Request for Form of Production**

*1. Definitions*

1.1. The requested information items herein include electronically stored information (including associated metadata and media source data), individual documents and records whether stored on paper, tape or film, as a discrete "file" stored electronically, optically, or magnetically or as a record within a database, archive, or container file.

1.2.  Requested information items may come from all data sources such as locations or media used to house information items.  Data sources include places, like warehouses, file rooms, file cabinets, bankers boxes, and folders, as well as storage media like hard drives and flash drives — e.g., on servers, desktop computers, laptops, iPads, and tablets — thumb drives, diskettes, optical disks, handheld devices, online storage, file shares (e.g., allocated network storage), databases (including e-mail client applications and servers), container files (e.g., PST, OST and NSF files, Zip archives and PDF portfolios), and back up tapes or other media used for backup or disaster recovery.

*2. General Provisions*

2.1. **To reduce cost and preserve maximum utility of electronically stored information, production in Portable Data Format (PDF) shall be the required form of production for Electronically Stored Information ("ESI") -- with original metadata and media source data preserved -- in this cause.** *See* Fed. R. Civ. P. 34(b); Tex. R. Civ. P. 196.4.

2.2. **Defendant is obliged to consider for preservation and identification all potentially responsive information items and data sources over which Defendant (including its employees, agents, officers, and directors) has possession, physical custody, or a right or ability to exert direction or control**.  The belief that an employee, agent, or contractor may fail to act upon, or conform to, an exercise of direction or control is not a justification for Defendant to fail to undertake an exercise of direction or control directed to preservation, identification, and, as potentially responsive or relevant, production of information items and data sources.

2.3.  Production of information in electronic formats shall not relieve Defendant of the obligation to act with reasonable diligence to preserve the native electronic data sources of the information items produced and relevant metadata.  Defendant shall be vigilant not to wipe or dispose of source media.

2.4.  Where, in the usual course of business, a paper document has been imaged as a TIFF or PDF file or an electronic file has been printed or converted to an imaged format, the electronic file and the hard copy or imaged counterpart *may not* be treated as identical or cumulative such that the paper/imaged format may be produced in lieu of its electronic source.

2.5.  Defendant must produce Optical Character Recognition ("OCR") textual content when Defendant produces images in lieu of paper originals.  However, Defendant is not obligated to undertake OCR for information items in the PDF, TIFF, or JPG file formats when Defendant does not hold the textual contents of such files in an electronically searchable form at the time of the request for production; provided, however, that if Defendant adds or acquires such electronic searchability, Defendant shall supplement production to make such capability available to Plaintiff in a reasonable manner at Defendant's cost.

*3. Scope*

3.1.   Defendant must act with reasonable diligence to identify and produce responsive, non-privileged ESI under its care, in its custody, or subject to its control, notwithstanding its location, format, or medium.

3.2.   Defendant shall produce responsive, non-privileged files, including those with the following extensions: ace, arc, arj, arx, bh, cal, cat, csv, dat, db, dbx, doc, docx, dot, dotm, dotx, dst, dstx, efx, email, eml, gnu, gra, gz, gzip, jar, lha, mbox, mbx, mdb, mde, mde, mpp, msg, nsf, ost, pdf, pnf, pot, potx, ppt, pptx, pst, pub, rar, rpt, rtf, shw, tar, taz, thmx, tif, tiff, txt, tz, wbk, wk4, wmf, wpd, wps, wri, xla, xlam, xlm, xls, xlsm, xlsx, xlt, xltx, z, zip.

3.3.   The file types listed in 3.2 must be identified and considered in searching for potentially responsive ESI; however, this is not an exclusive list of all potentially responsive file types. Defendant is expected to apply its knowledge of information systems and applications used by employees when seeking to identify potentially responsive file types, as well as to make a reasonably diligent search for responsive file types not listed.

*4. Unique Production Identifier ("UPI")*

4.1.   Other than paper originals and images of paper documents (including redacted ESI), no ESI produced in discovery need be converted to a paginated format nor embossed with a Bates number.

*5. Form of Production of E-Mail and Attachments*

5.1.   E-mail shall be produced in PDF format, with original metadata and media source data preserved. Care shall be taken to produce complete email strings identifying all senders and recipients of emails, dates and times. **It is not allowed, nor does Plaintiff give permission to producing party to destroy or omit, in part or in whole, any such information.**

5.2.   Attachments to e-mails shall not be produced separately but be produced contiguous with the email to which it is attached.

*6. Databases*

6.1.   Prior to production of any database, the Defendant shall meet and confer regarding the reasonableness and feasibility of any request for production of, or from, a database including the scope, form, and content of any such production.   However, Defendant shall make reasonable efforts to produce responsive information and data from databases using existing query and reporting capabilities of the database software. To facilitate such interrogation, Defendant shall act reasonably and cooperatively to comply with requests from Plaintiff for information about the reporting capabilities, structure, organization, query language, and schema of the database.

*7. Load Files*

7.1.  Consistent with the provisions of these instructions, Defendant shall produce responsive ESI to Plaintiff in its *native electronic format but converted to PDF format, with original metadata and media source data preserved,* but when ESI is can only be produced in native format, it must be accompanied by a load file, Defendant shall produce load files in the Concordance load file format.

7.3.   Required Fields: The load file shall include the following delimited fields:

      7.3.1.   Identifier – UPI- The unique production identifier of the item;

7.3.2.  Source Name – NAME - The original name of the item or file when collected from the source custodian or system;

7.3.3.  MD5 Hash – MD5 - The MD5 hash value of the item as produced;

7.3.4.  Custodian – CUSTODIAN -The unique identifier for the original custodian or source system from which the item was collected;

7.3.5.  Source Path – SPATH -The fully qualified file path from root of the location from which the item was collected;

7.3.6.  Production Path – NATIVELINK -The file path to the item from the root of the production media;

7.3.7.  Modified Date – MODDATE -The last modified date of the item when collected from the source custodian or system;

7.3.8.  Modified Time – MODTIME - The last modified time of the item when collected from the source custodian or system; and

7.3.9.  UTC Offset – UTCOFF - The UTC/GMT offset of the item's modified date and time.

7.4.  The following additional fields shall accompany production of e-mail messages:

7.4.1.  To – RECIPIENT – Addressee(s) of the message;

7.4.2.  From – FROM – The e-mail address of the person sending the message;

7.4.3.  CC – CC – Person(s) copied on the message;

7.4.4.  BCC – BCC – Person(s) blind copied on the message;

7.4.5.  Date Sent – DATESENT – date the message was sent;

7.4.6.  Time Sent – TIMESENT – time the message was sent;

7.4.7.  Subject – SUBJECT – Subject line of the message;

7.4.8.  Date Received – DATERCVD – date the message was received;

7.4.9.  Time Received – TIMERCVD – time the message was received;

7.4.10.  Attachments – ATTACHMENTID – The beginning UPI(s) of attachments, delimited by comma;

7.4.11.  Mail Folder Path – MAILPATH – the path of the message from the root of the mail folder; and

7.4.12.  Message ID – MESSAGEID – The Microsoft Outlook or similar unique message identifier.

7.5.  The following additional fields shall accompany images of paper documents:

7.5.1.  Beginning Identifier – BEGNO – The beginning unique production identifier for the first page of the document;

7.5.2.  Ending Identifier – ENDNO – The ending unique production identifier for the first page of the document;

7.5.3.  Page Count – PGCOUNT – The total number of pages in the document;

7.5.4.  Location – LOCATION – The source box or other location identifier needed to trace the document to its source.

7.6.  E-Mail Messages and Attachments: Shall not be flattened to remove embedded text, such as from Optical Character Recognition software, images or fields.

7.7.  Document Images: Text extracted from paper document images using optical character recognition shall be produced as embedded text within the PDF document produced.

*8. Deduplication*

8.1.    Defendant *shall not* globally (i.e. horizontally) deduplicate production or apply e-mail threading without express authorization from Plaintiff or the Court.

### 9. Redaction

9.1.    Files that must be redacted shall be produced as PDF images accompanied by load files conforming to 7 (above) and containing extracted text acquired after redaction (i.e., excluding redacted content).

9.2.    Defendant may employ native redaction techniques so long as the method of redaction employed **does not impair** the **searchability of the redacted item and the fact of alteration is disclosed.**

9.3.    Redactions must be logged in the manner of any other responsive material withheld on claims of privilege or confidentiality.

### 10. Imaging and Unitization

10.1.    Imaging: Paper documents produced electronically shall be:

    **10.1.1 Imaged at 300 DPI as multipage PDF files;**

    **10.1.2. Produced with OCR text;**

    **10.1.3.    Reflective, without visual degradation, of the full and complete information contained in the original document; and,**

    **10.1.4. In compliance with reasonable requests for color image formats of the original at Defendant's cost, if an original document contains color used in a manner material to the import or understanding of the document.    Color documents shall be produced as PDF**.

10.2.    Unitization: If a scanned document is more than one page, the unitization of the document and any attachments **shall be maintained as it existed in the original when creating the image file**. **For documents that contain affixed notes**, **the pages will be scanned both with and without the notes and those pages will be treated as part of the same document**.    The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents **where a parent-child relationship exists between the documents**) shall be maintained through the scanning or conversion process, and noted as such when producing, e.g. cover letter with enclosures, binder containing multiple documents, file folder containing multiple documents, etc..    If more than one level of parent-child relationship exists, documents shall be kept in order, but all will be treated as children of the initial parent document, and noted as such in production.

### 11. Cooperation and Transparency

11.1.    Defendant shall identify and facilitate access to the contents of encrypted, corrupted, or difficult-to-access files produced.    Defendant shall confer with Plaintiff to fashion reasonable, precise, and cost-effective search strategies and to agree upon and implement appropriate measures for quality assurance and quality control.    Defendant shall be forthcoming and transparent in disclosing its use of mechanized tools to cull responsive data.

### 12. Production Media and Transmittal

12.1.    Production volumes below 12 gigabytes may be produced on three or fewer DVD-ROM optical disks.

12.2.  Production volumes greater than 12 gigabytes shall be produced as uncompressed data on Windows-compatible external hard disk drives employing the USB 2.0 or USB 3.0 interface.

12.3.  Production media shall be prominently and uniquely labeled to identify Defendant, the date of production, and the range of UPI on the medium.

12.4.  Defendant shall accompany the production with a written transmittal that sets out the:

12.4.1.  Range of Unique Item Identifiers included within the production;

12.4.2.  The total number of items produced;

12.4.3.  The structure of the load file, including the delimiters employed and a list of delimited fields in the order in which they are employed in the load file;

12.4.4.  Confirmation that the number of items produced matches the load file(s);  and

12.4.5.  A privilege log identifying any documents withheld from the data sources being produced, if any.

12.5.  Defendant shall exercise care to guard against truncation or data loss attendant to overlong file names and file paths.

**Rule 34(b) directive:**

This Request for Production seeks the production of electronically stored information (ESI) and physical documents and media as kept by Defendant in the usual course of business. Hence, some requests request information kept or maintained as electronically stored information (ESI) such as: word processing documents, spreadsheets, audio and video recordings, emails, instant messages and information on local and cloud-based applications, and on Software as a Service third party platforms, all of which may be on (or accessed from) desktop computers, laptop computers and tablet computers, on local or cloud servers, on mobile phones, on portable storage devices and other storage media. Other requests seek information/documentation which is originally kept in a physical format, such as: handwritten notes, paper documents, printed photographs, audio/video recordings, posters etc.; any of which may be stored in binders, notebooks, desks, cabinets, closets, boxes, warehouses, on walls, etc. Requests for production of ESI herein DO NOT OVERLAP with requests for production or documents and material maintained in a physical format, as the information or materials sought come from different sources.

NEITHER request for ESI or physical documents and media allows for the destruction of such information or the production of information in degraded form. However, information originally kept in ESI formats should be produced in PDF format with source media data, OCR data and metadata preserved.

Part ONE: REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI), DOCUMENTS AND TANGIBLE THINGS.

REQUEST FOR PRODUCTION NO. 1 (ESI) and physical)

Without wiping out or deleting source media and metadata, produce all of Defendant's files and subfiles, documents and electronic information which are kept and maintained on Mariana Balderrama ("Plaintiff") in native electronic file formats or in physical paper format, and as kept in the course of business, as follows:

a. all work absence and attendance logs/files on and for Plaintiff,

b. all notices, correspondence and memos to and from Plaintiff concerning Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask;

c. Plaintiffs employee evaluations and disciplinary files,

d. Plaintiff's worker's compensation and medical files,

e. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials of same, work place accommodations and denials of same, reasonable accommodations and denials of same, investigations, terminations, lay offs, separations, etc., about Plaintiff,

f. all documents and files created by those with successive authority over Plaintiff, including supervisors, about Plaintiff's illnesses, disabilities, medical conditions, work restrictions or limitations, and/or requests for accommodations and denials of same, termination or separation from employment,

g. all emails and attachments to and from Plaintiff's supervisors' about Plaintiff's illnesses, disabilities, medical conditions, work restrictions or limitations, and/or requests for accommodations and denials of same, termination or separation from employment,

h. all emails and attachments to and from Plaintiff's managers' about Plaintiff's illnesses, disabilities, medical conditions, work restrictions or limitations, requests for accommodations and denials of same, termination or separation from employment,

i. all emails and attachments to and from Defendant's Human Resources personnel about Plaintiff's illnesses, disabilities, medical conditions, work restrictions or limitations, requests for accommodations of same, termination or separation from employment,

j. all text messages and instant messages to and from Plaintiff's supervisors' and managers' accounts about Plaintiff's illnesses, disabilities, medical conditions, work restrictions or limitations, requests for accommodations and denials of same, termination or separation from employment,

k. all text messages and instant messages to and from Defendant's Human Resources personnel accounts about Plaintiff's illnesses, disabilities, medical conditions, work restrictions or limitations, requests for accommodations and denials of same, termination or separation from employment,

l. Plaintiff's payroll history, payroll and compensation files,

m. Plaintiff's employee benefits files for the duration of all employment periods with Defendant,

n. Plaintiff's training files,

o. Plaintiff's applications and new hire orientation file,

p. all witness statements taken concerning Plaintiff during all investigations about Plaintiff, including about Plaintiff's illnesses, disabilities, medical conditions, work restrictions or limitations, requests for accommodations and denials of same, termination or separation from employment,

q. all witness statements taken concerning Plaintiff during all investigations about Plaintiff's reports and complaints during Plaintiff's employment with Defendant.

r. excepting attorney-client privileged material, all files, reports and summaries about Defendant's investigation into Plaintiff's complaints and reports, if any, during Plaintiff's employment with Defendant.

s. all files and documents memorializing Defendant's attempts to provide workplace accommodations to Plaintiff, including cost calculations, costs analysis, and research, if any.

t. all hand written notes by Defendant's agents, supervisors, and managers about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant;

w. Plaintiff's complete employee file with subfiles regardless of what Defendant calls them.

REQUEST FOR PRODUCTION NO. 2

Produce all video files and recordings, audio files and recordings, notebooks, pamphlets and posters, provided to or shown to Plaintiff before hiring and during the course of Plaintiff's employment with Defendant relating to illegal disability discrimination and retaliation, equal employment opportunity in the workplace, and illegal discrimination in the workplace.

REQUEST FOR PRODUCTION NO. 3

Produce all of Defendant's employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks evidencing the policies and procedures which Defendant applies to its employees concerning illegal disability discrimination and retaliation made the basis of Plaintiff's lawsuit, equal employment opportunity in the workplace, and illegal discrimination in the workplace in effect from January 1, 2024 to December 31, 2024.

REQUEST FOR PRODUCTION NO. 4

Produce all of Defendant's handbooks, manuals, memos, advisories and notices relating to all actions which are to be taken by Defendant in response to a report of a potential disability (including a report of injury) by an employee, a request for an accommodation to a disability by an employee, and a report or complaint of illegal discrimination or retaliation by an employee, including written procedures and protocols for investigating such reports and complaints in effect from January 1, 2024 to December 31, 2024.

REQUEST FOR PRODUCTION NO. 5

     If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation, including concerning the American's with Disabilities Act over the last five years, please produce all electronically stored information in native electronic file format showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters shown during such training.

REQUEST FOR PRODUCTION NO. 6

     If Defendant's employees or agents have received any training via courses or classes regarding illegal discrimination or retaliation, including about the Americans with Disabilities Act over the last five years, produce all documentation showing attendance in such courses or classes and all class or course material including videos, manuals, notebooks, pamphlets, documents and posters received during such training.

REQUEST FOR PRODUCTION NO. 7

     Produce all electronically stored information, in native electronic file format as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

REQUEST FOR PRODUCTION NO. 8

     Produce all documentation, as kept in the usual course of business, memorializing or showing disciplinary actions, if any, against the persons identified in response to Interrogatories Nos. 7 and 8, on account of all employment actions taken by Defendant regarding Plaintiff.

REQUEST FOR PRODUCTION NO. 9

     Produce all documentation describing Plaintiff's job duties and essential job functions during all work periods with Defendant.

REQUEST FOR PRODUCTION NO. 10

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all investigators relating to Plaintiff's employment, taxes, benefits, and reports and complaints of discrimination.

REQUEST FOR PRODUCTION NO. 11

Produce all hard copy and electronically stored information—in native electronic file format— as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all state government agencies including the Workforce Commission and the Civil Rights Division relating to Plaintiff's employment, taxes, benefits, and reports and complaints of disability discrimination and/or retaliation from September 1, 2024 to the present.

REQUEST FOR PRODUCTION NO. 12

Produce all hard copy and electronically stored information — in native electronic file format — as kept in the usual course of business of all communications (e.g., faxes, emails, memos, texts, instant messages, correspondence, reports, notes) between Defendant's employees and all federal government agencies such as the EEOC, relating to Plaintiff's employment, taxes, benefits, and reports and complaints of disability discrimination and/or retaliation from September 1, 2024 to the present.

REQUEST FOR PRODUCTION 13

Produce all research, costs calculations, costs analysis, notes, if any, which support any undue hardship or undue burden defense concerning Plaintiff's requests for a reasonable accommodation.

REQUEST FOR PRODUCTION 14

Whether or not Defendant is making any type of undue hardship or undue burden defense, produce all research, costs calculations, costs analysis, notes, and memorialized discussions,

including emails, charts, receipts, etc. concerning Defendant's attempts, if any, to provide Plaintiff with a reasonable accommodation.

REQUEST FOR PRODUCTION 15

Produce documentation prepared according to Generally Accepted Accounting Principles (GAAP) of Defendant's net worth or shareholders equity, which is Defendant's assets minus liabilities, over the last 4 years through the time of trial.

REQUEST FOR PRODUCTION 16

Produce all formal and informal agreements, written or unwritten, between Defendant and any other defendant or third party concerning this lawsuit, including the defense of this lawsuit, and indemnity concerning this lawsuit.

REQUEST FOR PRODUCTION 17

Produce all written, recorded, or otherwise memorialized communications between Defendant, its employees, managers, supervisors, agents, and any agency, department, or office of the United States Government, including the United States Customs and Border Patrol, concerning the Plaintiff.

REQUEST FOR PRODUCTION 18

Produce Plaintiff's questionnaire and Office of Personnel Management Standard Form 85 (SF-85)

**Part TWO: INTERROGATORIES AND SECOND REQUEST FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI), DOCUMENTS AND TANGIBLE THINGS**

INTERROGATORY NO. 1

Identify by name, last known address, telephone number and job title, Plaintiff's immediate supervisor or supervisors and all others with successive authority over the Plaintiff and the Plaintiff's work while employed with Defendant.

INTERROGATORY NO. 2

Identify by name, last known address, telephone number and job title all persons responsible for making Defendant's employment decisions regarding hiring, firing, leave, discipline and employment benefits over the last five years.

INTERROGATORY NO. 3

Provide Plaintiff's job title and describe Plaintiff's essential job functions and duties.

INTERROGATORY NO. 4

Identify, describe and provide the amounts of all pay rates, wages, and employment benefits, e.g., medical insurance, dental insurance, workers' compensation insurance, other insurance, 401K plan benefits, pension benefits, etc., provided to or available to Plaintiff just before Plaintiff was terminated and during the course of Plaintiff's employment with Defendant.

INTERROGATORY NO. 5

Provide every reason Defendant gave at the time of Plaintiff's separation from employment, why Plaintiff was laid off, discharged or, otherwise, separated from employment with the Defendant.

INTERROGATORY NO. 6

In connection with the immediately preceding Interrogatory, identify by name, last known address, telephone number and job title the persons with knowledge of the reasons or circumstances surrounding Defendant's layoff or discharge of Plaintiff or, otherwise, Plaintiff's separation from employment with Defendant.

INTERROGATORY NO. 7

Identify by name, last known address, telephone number and job title the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant.

REQUEST FOR PRODUCTION NO. 7A

Produce Defendant's files and subfiles, physical hard copy documents and electronic information which are kept and maintained on the persons who made the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from employment with Defendant, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and accommodations, investigations, terminations, lay offs, separations, etc., about that persons,

d. all files created by those with successive authority over that person including supervisors about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant,

e. all emails and attachments to and from that person's work email accounts about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant.

INTERROGATORY NO. 8

Identify by name, last known address, telephone number and job title the persons, other than those identified in the immediately preceding Interrogatory, who approved, authorized or

ratified the decision to layoff or discharge Plaintiff or to, otherwise, separate Plaintiff from Plaintiff's employment with Defendant.

REQUEST FOR PRODUCTION NO. 8A

Produce Defendant's files and subfiles, physical hard copy documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows :

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and accommodations, investigations, terminations, lay offs, separations, etc., about that persons,

d. all files created by those with successive authority over that person including supervisors about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant,

e. all emails and attachments to and from that person's work email accounts about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant.

INTERROGATORY NO. 9

Identify and describe, verbatim, the policies and provide the factual bases pursuant to which Plaintiff was laid off, discharged or, otherwise, separated from employment with Defendant.

INTERROGATORY NO. 10

Identify by name, job title, last known address and telephone number Defendant's employees who, over the last 4 years, violated the policies identified and described in the immediately preceding interrogatory.

REQUEST FOR PRODUCTION NO. 10A

Produce Defendant's files and subfiles, physical hard copy documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about that person's requests for reasonable accommodations, if any,

e. all emails and attachments to and from that person's work email accounts about that person's requests for reasonable accommodations, if any,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant.

INTERROGATORY 11

Identify every reason, and PROVIDE EVERY FACTUAL BASIS, explaining why Defendant has not allowed the Plaintiff to return to work with defendant at the same position.

INTERROGATORY NO. 12

Describe and identify any training, including by way of courses, classes or other mediums, whether formal or informal, which Defendant's agents and employees have been provided on the subject of illegal disability discrimination and retaliation made the basis of Plaintiff's lawsuit.

INTERROGATORY NO. 13

Identify by name, address, telephone number and job title, Defendant's agents or employees, including Maria Soto, Jacob Adorno, Frankie LNU, Abigail LNU, Laura LNU, Daniela LNU, Carlos Deliz, Diana Alvarez, and Aracely Gallegos who have received any of the training described in the immediately preceding Interrogatory regarding illegal disability discrimination and retaliation made the basis of Plaintiff's lawsuit.

INTERROGATORY NO. 14

Identify by name, last known address, telephone number and job title specifically those persons in Defendant's Human Resources Department, or any or any other employee, supervisor or manager charged with carrying out procedures or decisions regarding providing reasonable accommodations to employees with disabilities, providing medical leave to employees, hiring, firing, discipline, and employee benefits, relating to Plaintiff.

INTERROGATORY NO. 15

Identify by name, last known address, telephone number, and date of birth the person(s) who took over Plaintiff's job duties.

REQUEST FOR PRODUCTION NO. 15A

Produce Defendant's files and subfiles, physical hard copy documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about that person's requests for reasonable accommodations, if any,

e. all emails and attachments to and from that person's work email accounts about that person's requests for reasonable accommodations, if any,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant.

<u>INTERROGATORY NO. 16</u>

If in response to discovery you withheld any information, documents or material due to "privacy" or "confidentiality" concerns, or under a claim of privilege, describe the information, documents or material withheld and identify the privilege, if any, asserted for each item or group of items withheld.

<u>INTERROGATORY NO. 17</u>

Describe in reasonable detail the investigation and or investigations Defendant undertook into Plaintiff's claims of disability discrimination and or retaliation, Plaintiff's requests for accommodation or leave, by providing the names, last known addresses and phone numbers of the investigators, the witnesses whom were identified, the date each witness was communicated with, the information received from each witness or document and the outcome of the investigation and/or investigations.

<u>INTERROGATORY NO. 18</u>

Identify by name, job title, last known address and telephone number Defendant's employees who, over the last three (3) years, have requested reasonable accommodations for injury, illness, or disability.

REQUEST FOR PRODUCTION NO. 18A

Produce Defendant's files and subfiles, physical hard copy documents and electronic information which are kept and maintained on the persons identified in the immediately preceding interrogatory, in their native electronic file formats and as kept in the usual course of business, as follows:

a. that person's work absence and attendance log files,

b. that person's employee evaluations and disciplinary files,

c. all files created by Human Resources and those with HR functions showing any personnel action, such as promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, separations, etc., about that person,

d. all files created by those with successive authority over that person including supervisors about that person's requests for reasonable accommodations, if any,

e. all emails and attachments to and from that person's work email accounts about that person's requests for reasonable accommodations, if any,

f. all text messages and instant messages from that person about Plaintiff,

g. that person's training files,

h. that person's applications and new hire orientation file,

i. all witness statements taken by and from that person during all investigations about Plaintiff,

j. all witness statements taken by and from that person concerning Plaintiff during all investigations about Plaintiff's request that other employees not touch Plaintiff, Plaintiff's request to not wear a face mask, and Plaintiff's separation from employment with Defendant.

k. That person's job title and description of that person's job duties,

l. That person's direct supervisor and those with successive authority over that person,

m. Documents showing that person's date of separation from employment and the circumstances of that person's separation from employment.

INTERROGATORY NO. 19

Provide the full name, date of birth, job title, and dates of employment with Defendant, for Supervisor Frankie "Last Name Unknown" (LNU), the individual from which Plaintiff requested a reasonable accommodation as described in paragraphs 14 -16 of Plaintiff's Original Complaint.

INTERROGATORY NO. 20

Provide the full name, date of birth, job title, and dates of employment with Defendant, for Supervisor Abigail LNU, the individual from which Plaintiff requested a reasonable accommodation as described in paragraphs 17-18 of Plaintiff's Original Complaint.

INTERROGATORY NO. 21

Provide the full name, date of birth, job title, and dates of employment with Defendant, for Supervisor Laura LNU, the individual from which Plaintiff requested a reasonable accommodation as described in paragraphs 17-18 of Plaintiff's Original Complaint.

INTERROGATORY NO. 22

Provide the full name, date of birth, job title, and dates of employment with Defendant, for Supervisor Daniela LNU, the individual Plaintiff met with as described in paragraphs 19 of Plaintiff's Original Complaint.

INTERROGATORY NO. 22

Provide the full name, date of birth, job title, and dates of employment with Defendant, for Supervisor "First Name Unknown" (FNU) LNU, the individual Plaintiff met with as described in paragraph 19 of Plaintiff's Original Complaint.

INTERROGATORY NO. 23

Provide the full name, date of birth, job title, and dates of employment with Defendant, for Vetting Services Specialist FNU LNU, the individual that terminated Plaintiff's employment with Defendant as described in paragraph 30 of Plaintiff's Original Complaint.

## Part THREE: NOTICE OF REQUIRED DISCLOSURES

Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) Required Disclosures.

(1) Initial Disclosure.

(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

[]

(C) Time for Initial Disclosures—In General. A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

(D) Time for Initial Disclosures—For Parties Served or Joined Later. A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

(E) Basis for Initial Disclosure; Unacceptable Excuses. A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) Disclosure of Expert Testimony.

(A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) Supplementing the Disclosure. The parties must supplement these disclosures when required under Rule 26(e).

(3) Pretrial Disclosures.

(A) In General. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

(i) the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) Time for Pretrial Disclosures; Objections. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

(4) Form of Disclosures. Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

**Chavez Law Firm**
Attorneys & Counselors at Law

_____

2101 N. Stanton Street                                      Telephone   915-351-7772
El Paso, Texas 79902
                                September 29, 2025


Via  email \ fax
Bradley Arant Boult Cummings LLP
1445 Ross Avenue Suite 3600,
Dallas, Texas 75202
214-257-9827,
fax 214-939-8787
Jennifer M. Trulock jtrulock@bradley.com
Leanne K. Thoreson lthoreson@bradley.com


Re:     *Mariana Balderrama v. Deployed Services, LLC*
          3:25-cv-00214-KC

Dear Counselors:

          Enclosed, please find PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION OF
DEFENDANT'S DESIGNATED REPRESENTATIVES WITH DUCES TECUM.

          This is an attempt to confer. Please provide a range of dates on which to take Defendant's
30(b)(6) depositions.

          Please respond within two weeks of the date of this letter. Otherwise, I may need to
schedule such deposition on a date which may not be convenient to you.

          I remain

                                        Respectfully yours,

                                        /s/Michael M. Osterberg

                                        Michael M. Osterberg
                                        Chavez Law Firm
          MMO/ecj

IN THE UNITED STATES DISTRICT COURTS FOR
THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

Mariana Balderrama,
     Plaintiff,

v.                                                                    Cause No. 3:25-cv-00214-KC

Deployed Services, LLC,
     Defendant.

<u>PLAINTIFF'S NOTICE OF 30(b)(6) STENOGRAPHIC AND VIDEO DEPOSITION OF
DEFENDANT'S DESIGNATED REPRESENTATIVES WITH DUCES TECUM</u>

TO:    Defendant, Deployed Services.

      Pursuant to the Federal Rules of Civil Procedure, Plaintiff(s) will take the sworn deposition testimony of **the Designated Representative(s)** of Deployed Services who is/are to be sworn by an officer authorized to administer oaths at Rasberry and Associates, 201 E. Main, Suite 1616, El Paso, Texas 79901, Tel 915/533-1199, on a date to be determined. Plaintiff will depose the Designated Representative(s) on the topics attached as Exhibit A. You are also commanded to produce documents responsive to attached Duces Tecum within 30 days. As part of the obligation to confer, please provide a range of dates on which to take the deposition. The deposition will be recorded stenographically and by video.

      Your failure or refusal to provide dates may result in the scheduling of this deposition at a date and time inconvenient to you.

**SIGNED** on September 29, 2025.

                    Respectfully submitted,

                    **Chavez Law Firm**
                    2101 N. Stanton Street
                    El Paso, Texas 79902
                    915/351-7772

      By:    _/s/Michael M. Osterberg _____
             Michael M. Osterberg, TX Bar No. 24001873
             mikeosterberg@chavezlawpc.com
             Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

On September 29, 2025, I certify that the foregoing instrument was served on the following attorneys of record by electronic means:

Bradley Arant Boult Cummings LLP
1445 Ross Avenue Suite 3600,
Dallas, Texas 75202
214-257-9827,
fax 214-939-8787
Jennifer M. Trulock jtrulock@bradley.com
Leanne K. Thoreson lthoreson@bradley.com
*Attorneys for Defendant Deployed Services, LLC*

                        _/s/Michael M. Osterberg _____
                        Michael M. Osterberg

## EXHIBIT A

## TOPICS

1. The **data sources and types of media** Defendant used to house, store, maintain, hold and/or keep Defendant's employment and personnel information about Plaintiff, comparator employees, its decision makers, employees, and agents, including Maria Soto, Jacob Adorno, Frankie LNU, Abigail LNU, Laura LNU, Daniela LNU, Carlos Deliz, Diana Alvarez, and Aracely Gallegos, concerning related employment decisions made and actions taken by Defendant's agents, and the specific locations where electronically stored information (including associated metadata and media source data), individual documents and records whether stored on paper, tape or film, as a discrete "file" stored electronically, optically, or magnetically or as a record within a database, archive, or container is kept by Defendant. Data sources include places like warehouses, file rooms, file cabinets, bankers boxes, and folders, as well as storage media like hard drives and flash drives — e.g., on servers, desktop computers, laptops, iPads, and tablets — thumb drives, diskettes, optical disks, handheld devices, online storage, file shares (e.g., allocated network storage), databases (including e-mail client applications and servers), container files (e.g., PST, OST and NSF files, Zip archives and PDF portfolios), and back up tapes or other media used for backup or disaster recovery.

2. The **substance of training**, if any, which Defendant provided **to Plaintiff**, specifically, before hiring and during the course of Plaintiff's employment with Defendant relating to (a) equal employment opportunity in the workplace, (b) preventing in the workplace illegal disability discrimination and retaliation, and (c) the workplace polices, protocols, and procedures it applies to its employees generally, including the substance of Defendant's policies, protocols, and procedures as written in its employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks.

3. The **substance of training**, if any, which Defendant provides its **employees, supervisors, and managers**, including Maria Soto, Jacob Adorno, Frankie LNU, Abigail

LNU, Laura LNU, Daniela LNU, Carlos Deliz, Diana Alvarez, and Aracely Gallegos, if any, about (a) equal employment opportunity in the workplace, (b) preventing in the workplace illegal disability discrimination and retaliation, and (c) the workplace polices, protocols, and procedures it applies to its employees generally, including the substance of Defendant's policies, protocols, and procedures as written in its employee handbooks, employee policy manuals, memos, advisories and notices, Human Resources manuals, memos, advisories, notices and handbooks.

4.  The **substance of training**, if any, which Defendant provides its employees, supervisors, and managers, including Maria Soto, Jacob Adorno, Frankie LNU, Abigail LNU, Laura LNU, Daniela LNU, Carlos Deliz, Diana Alvarez, and Aracely Gallegos, about what action, if any, is to be taken in response to a **report or complaint of illegal disability discrimination or retaliation in the workplace** including the substance of written procedures and protocols for investigating such reports and complaints.

5.  The factual basis, or lack thereof, for **Defendant's employment and personnel decisions** which led to or contributed, in any way, to the **separation** of Plaintiff from Defendant's employment, including the identify of those **who** made, ratified and contributed to such decisions, **how** such decisions were made, **how** such decisions were **documented**, if at all, **when** such decisions were made, the location and substance of any and all **documentation**, including electronically stored information ("ESI"), concerning such decisions, if any, as well as the **creation dates, modification dates and authorship** of such documentation and electronically stored information.

6.  The factual basis, or lack thereof, for **Defendant's employment and personnel decisions** which led to or contributed, in any way, to any and all **discipline** of Plaintiff, if any, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information ("ESI"), concerning such decisions, if any, as well as the

creation dates, modification dates and authorship of such documentation and electronically stored information.

7.  Defendant's communications concerning the matters of the disability discrimination and retaliation complained of in Plaintiff's lawsuit, including the identify of those who made, ratified and/or contributed to such communications, how such communications were made, how such communications were documented, if at all, when such communications were made, the location and substance of any and all documentation memorializing such communications, including electronically stored information, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

8.  The substance of and factual basis for Defendant's corporate knowledge of the **monetary value, including the market value, of Plaintiff's compensation** and all employee benefits, including medical insurance, dental insurance, workers' compensation coverage insurance, other insurance, 401K plan benefits, and pension benefits available to Plaintiff during all employment periods with Defendant or to be available to Plaintiff in the future including upon termination of any probationary period or any waiting period. If the value of Plaintiff's benefits may be stated as a percentage of salary or wages, Defendant should be prepared to testify as to this amount/percentage as well.

9.  The factual basis, or lack thereof, for Defendant's **employee evaluations** of Plaintiff, the employment decisions it then took, or did not take, as a result of such evaluations, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information, concerning such decisions, if any, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

10. Excepting attorney-client communications and work product, the substance of and factual basis for **Defendant's corporate knowledge of all statements** about the discriminatory and retaliatory acts Plaintiff complains of, including all statements made by any and all persons before, during or after any formal or informal investigatory process.

11. The factual basis, or lack thereof, for the actions Defendant took, or did not take, concerning any and all notices/reports for Plaintiff's **injury, illness, and/or disability**, including requests for reasonable accommodations of same, as well as the identify of those **who** made, ratified and contributed to such decisions to accommodate or not accommodate the Plaintiff, **how** such decisions were made, **how** such decisions were **documented**, if at all, **when** such decisions were made, the location and substance of any and all **documentation**, including electronically stored information, concerning such decisions, if any, as well as the **creation dates, modification dates and authorship** of such documentation and electronically stored information.

12. The factual basis basis for **decisions by Human Resources and those with executive authority** for the promotions, transfers, pay changes, leave acceptances and denials, accommodations, investigations, terminations, lay offs, and separations, if any, of Plaintiff, and other employees in similar positions, i.e. other housekeeping and laundry staff, to Plaintiff, including the identify of those who made, ratified and contributed to such decisions, how such decisions were made, how such decisions were documented, if at all, when such decisions were made, the location and substance of any and all documentation, including electronically stored information, concerning such decisions, if any, as well as the creation dates, modification dates and authorship of such documentation and electronically stored information.

13. Plaintiff's essential job functions and duties for all employment periods with Defendant.

14. The substance of the training Defendant provided its supervisors, managers and Human Resources professionals about the interactive process for providing reasonable accommodations in the workplace to disabled employees.

15. The factual basis, or lack thereof, for the actions Defendant took, or did not take, concerning Plaintiff's reports of injury, illness and/or disability, including requests for reasonable accommodations of same, as well as the identify of those **who** made, ratified and contributed to such decisions to accommodate or not accommodate the Plaintiff, **how** such decisions were made, **how** such decisions were **documented**, if at all, **when** such decisions were made, the location and substance of any and all **documentation**, including electronically stored information, concerning such decisions, if any, as well as the **creation dates, modification dates and authorship** of such documentation and electronically stored information.

16. The substance of all communications, oral, written and electronic by, between and among Defendant's agents, and employees except those covered by the attorney-client privilege concerning the interactive process, if any, for providing Plaintiff a reasonable accommodation.

17. All actions which Defendant took as part of the interactive process for providing Plaintiff with reasonable accommodations to Plaintiff's disabilities, and the result of each.

18. The cost, if any, of requested, considered, and/or potential reasonable accommodations for Plaintiff's disabilities, including the factual basis for Defendant's claim, if any, of undue hardship.

19. Disciplinary actions, if any, it took against Defendant's employees for actions taken or decisions made regarding Plaintiff.

20. The substance of all communications, oral, written and electronic by, between and among Defendant, its employees, managers, supervisors, agents, and any agency, department, or office of the United States Government, including the United States Customs and Border Patrol, concerning the Plaintiff concerning Plaintiff's background check and vetting process.

## DUCES TECUM

1.  All handwritten notes, emails, memos, investigatory notes, and written communications by and to Maria Soto about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

2.  All handwritten notes, emails, memos, investigatory notes, and written communications by and to Jacob Adorno about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

3.  All handwritten notes, emails, memos, investigatory notes, and written communications by and to Frankie LNU about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

4.  All handwritten notes, emails, memos, investigatory notes, and written communications by and to Abigail LNU about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

5.  All handwritten notes, emails, memos, investigatory notes, and written communications by and to Laura LNU about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

6. All handwritten notes, emails, memos, investigatory notes, and written communications by and to Daniela LNU about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

7. All handwritten notes, emails, memos, investigatory notes, and written communications by and to Carlos Deliz about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

8. All handwritten notes, emails, memos, investigatory notes, and written communications by and to Diana Alvarez about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

9. All handwritten notes, emails, memos, investigatory notes, and written communications by and to Aracely Gallegos about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

10. All handwritten notes, emails, memos, investigatory notes, and written communications by and to Human Resources personnel about Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

11. All witness statements concerning Plaintiff's requests for reasonable accommodations that other employees not touch Plaintiff and Plaintiff's request to not wear a face mask from 2024 to the present, her disciplinary write ups, if any, and her termination or separation from employment, irrespective of the euphemism defendant uses to describe Plaintiff's termination.

12. All documents showing Defendant's net worth or shareholders equity over the last 4 years.

13. All employee evaluations of Plaintiff.

14. All disciplinary notices to Plaintiff.

15. All emails, instant messages, other electronically stored information and hand-written notes in any way memorializing the decision-making process and decision to separate Plaintiff from her employment with Defendant.

16. All emails, instant messages, other electronically stored information and hand-written notes in any way memorializing the decision-making process to deny and/or provide Plaintiff with a reasonable accommodation to Plaintiff's disability/pregnancy.

17. All written, recorded, or otherwise memorialized communications between Defendant, its employees, managers, supervisors, agents, and any agency, department, or office of the United States Government, including the United States Customs and Border Patrol, concerning the Plaintiff.

18. Plaintiff's questionnaire and Office of Personnel Management Standard Form 85 (SF-85).

19. All documents electronically stored information which support and form the basis for Defendant's corporate knowledge for the Topics listed in Exhibit A.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| EMMA APODACA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. EP-25-CV-50-KC |
| | § | |
| SCI TEXAS FUNERAL SERVICES, | § | |
| LLC, d/b/a CRESTVIEW FUNERAL | § | |
| HOME d/b/a HILLCREST FUNERAL | § | |
| HOME, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant SCI Texas Funeral Services' Motion to Stay all Discovery and Pretrial Deadlines Pending a Ruling on its Motion to Dismiss and Compel Arbitration ("Motion"), ECF No. 19. On April 4, 2025, SCI filed its Motion to Dismiss and Compel Arbitration, ECF No. 7, asking the Court to dismiss Plaintiff Emma Apodaca's claims with prejudice and to compel arbitration pursuant to an agreement allegedly signed by both parties. SCI now contends that "there is no reason" for the parties to engage in discovery while that Motion remains pending, and it asks the Court to stay all discovery and pretrial deadlines until the Motion is resolved. Mot. 4.

"The Court has 'broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.'" *See Ramirez v. Equifax Info. Servs., LLC*, No. 24-cv-94, 2024 WL 3259669, at *1 (E.D. Tex. July 1, 2024) (quoting *Fujita v. United States*, 416 F. App'x 400, 402 (5th Cir. 2011)). Thus, when there are threshold questions of jurisdiction or when "one issue may be determinative of a case," courts have discretion to stay discovery pending resolution of these issues. 9A Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure, § 2040 (3d ed. 2024).  In granting motions to stay discovery in the context of potentially arbitrable disputes, courts have reasoned that doing so enables parties to realize the benefits of arbitration, which include "less intrusive discovery."  *See Ramirez*, 2024 WL 3259669, at *2.

Here, the only prejudice Apodaca identifies is that she "has already expended time and resources propounding discovery requests."  Resp. 4, ECF No. 20.  She does not contend that she requires discovery to oppose SCI's Motion to Compel Arbitration.  *See generally id.*  The Court "does not find that Plaintiff's reasons for opposing a stay of discovery are persuasive."  *Waltrip v. Pilot Travel Centers LLC*, No. 21-cv-642, 2021 WL 6693841, at *3 (D.N.M. Dec. 14, 2021); *see also In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-cv-2795, 2018 WL 2122869, at *2 (D. Minn. May 8, 2018).  The Court therefore finds it appropriate to stay discovery pending resolution of whether the parties entered into a valid arbitration nagreement.  *See Patel v. Regions Bank*, No. 18-cv-796, 2018 WL 6422110, at *2 (M.D. La. Dec. 6, 2018) (finding good cause to stay discovery pending resolution of motion to compel arbitration); *see also Waltrip*, 2021 WL 6693841, at *3.

Accordingly, the Motion to Stay, ECF No. 19, is **GRANTED**.  The Court **ORDERS** that discovery is **STAYED** pending resolution of Defendant's Motion to Compel Arbitration.  The Court will enter scheduling and pre-trial deadlines, if necessary, upon resolution of Defendant's Motion.

APP 038

**SO ORDERED.**

SIGNED this 18th day of August, 2025.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

APP 039