UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

MARIANA BALDERRAMA,
    Plaintiff,

v.                                                                             Cause No. 3:25-cv-00214-KC

DEPLOYED SERVICES, LLC,
    Defendant.

<u>PLAINTIFF'S SUPPLEMENTAL BRIEF RESPONDING TO THE COURT'S
QUESTIONS IN THE COURT'S INTERIM ORDER</u>

TABLE OF CONTENTS

Argument ..................................................................................................................................1
I.   Defendant's response to the Court's Interim Order does not include the evidence the Court requested Defendant produce. ...........................................................................1
    A.   Defendant does not produce the August 2024 email Defendant alleges to have sent to Plaintiff. ................................................................................................1
    B.   Defendant does not authenticate the alleged report regarding Plaintiff's supposed interactions with the onboarding packet. ...........................................2
        1.   The Court's Interim Order instructed Defendant to properly authenticate any documents submitted in response to the Court's questions. .................2
        2.   The Federal Rules of Evidence require a party proffering an electronic record to provide a method for authenticating the accuracy of the data contained in the ESI document. ................................................................2
        3.   Defendant does not provide a method for authenticating the accuracy of the data contained in Defendant's proffered ESI document. .......................4
II.  The Court should hold a trial on Defendant's Motion to Compel Arbitration because there is a factual dispute regarding the formation or validity of Defendant's alleged arbitration agreement. ...............................................................................................5
III. Conclusion and Prayer. ...................................................................................................6
Certificate of Service ................................................................................................................8

## ARGUMENT

I. **DEFENDANT'S RESPONSE TO THE COURT'S INTERIM ORDER DOES NOT INCLUDE THE EVIDENCE THE COURT REQUESTED DEFENDANT PRODUCE.**

   A. **DEFENDANT DOES NOT PRODUCE THE AUGUST 2024 EMAIL DEFENDANT ALLEGES TO HAVE SENT TO PLAINTIFF.**

In the Interim Order, the Court instructed Defendant to "[s]tate whether Defendant provided the copy of the [arbitration] agreement [to Plaintiff] via an email, by hand delivery, or by another means." Ecf 19, p. 2, Question No. D1. And the Court additionally ordered that "Defendant SHALL SUBMIT documentary evidence such as a delivery email, hand delivery acknowledgment, etc., that shows that Defendant provided the copy of the agreement to Plaintiff." Ecf 19, p. 2, Question No. D1 (emphasis in original).

Defendant alleges that Defendant sent the supposed arbitration agreement to Plaintiff via email "to the Gmail account associated with Ms. Balderrama's Recruiting/Onboarding profile." Ecf 20, p. 4, ¶4. While Defendant spends much time explaining what Plaintiff's "Gmail account" address was, Ecf 20, p. 5, ¶6, **Defendant never proffers a copy of the alleged email**, despite the Court ordering Defendant to do so, Ecf 19, p. 2, Question No. D1. And Defendant admits to not having this alleged email because Defendant admits that "[Defendant] Deployed Services only has the text of the message sent to Ms. Balderrama's Gmail address." Ecf 20, p. 5, ¶5.

Despite assuring the Court that Defendant has the email text, Defendant does not have, and does not produce, the alleged email. And Defendant does not even state when the email was sent. The Court requested Defendant provide the date the email was sent. Ecf 19, p. 2, Question No. D1 ("On what date did Defendant provide the copy of the agreement?"). Defendant's response to this question throws around a number of dates in an attempt to distract the Court from the fact that Defendant does not know when the email was sent. Specifically, Defendant's

response to this question states that "the hire and start dates are both listed as August 14, 2024", Ecf 20, p. 4, ¶4, and in the same paragraph alleges that "[Plaintiff] viewed the Arbitration Agreement on August 16, 2024, Ecf 20, p. 5, ¶4. But Defendant never states that Defendant sent the alleged email on either of these dates, or on any other date.

> B. DEFENDANT DOES NOT AUTHENTICATE THE ALLEGED REPORT REGARDING PLAINTIFF'S SUPPOSED INTERACTIONS WITH THE ONBOARDING PACKET.
>
>> 1. THE COURT'S INTERIM ORDER INSTRUCTED DEFENDANT TO PROPERLY AUTHENTICATE ANY DOCUMENTS SUBMITTED IN RESPONSE TO THE COURT'S QUESTIONS.

In the Interim Order, the Court instructed Defendant to properly authenticate any documents submitted in response to the Court's questions. Ecf 19, p. 1 ("Where a question instructs a party to submit documents, such documents must be properly authenticated…".). This complies with the legal rule that authentication of a proffered document is a prerequisite to the document's admissibility. *U.S. v. Jackson*, 636 F.3d 687, 693 (5th Cir. 2011) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.") (quoting Fed. R. Evid. 901(a)).

>> 2. THE FEDERAL RULES OF EVIDENCE REQUIRE A PARTY PROFFERING AN ELECTRONIC RECORD TO PROVIDE A METHOD FOR AUTHENTICATING THE ACCURACY OF THE DATA CONTAINED IN THE ESI DOCUMENT.

"Data copied from an electronic device, storage medium, or file" may be authenticated through "a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11)." Fed. R. Evid. 902(14).

To authenticate a document "copied from an electronic device, storage medium, or file", the "qualified person" should certify that she compared the proffered document's "hash value" with the hash value of the original document, as follows:

> Today, data copied from electronic devices, storage media, and electronic files are ordinarily authenticated by "hash value". … This amendment allows self-authentication by a certification of a qualified person that she checked the hash value of the proffered item and that it was identical to the original.

Fed. R. Evid. 902, *Committee Notes on Rules—2017 Amendment*.

"A hash value is (usually) a short string of characters generated from a much larger string of data (say, an electronic image) using an algorithm — and calculated in a way that makes it highly unlikely another set of data will produce the same value. Some consider a hash value as a sort of digital fingerprint." *U.S. v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016) (citing Richard P. Salgado, *Fourth Amendment Search and the Power of the Hash*, 119 Harv. L. Rev. F. 38, 38-40 (2005)). As the Committee Notes on Rule 902 of the Federal Rules of Evidence state:

> A hash value is a number that is often represented as a sequence of characters and is produced by an algorithm based upon the digital contents of a drive, medium, or file. If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical. Thus, identical hash values for the original and copy reliably attest to the fact that they are exact duplicates.

Fed. R. Evid. 902, *Committee Notes on Rules—2017 Amendment*.

This requirement that a party authenticate copies of ESI by comparing the proffered documents' hash values is in line with "[t]he long-accepted practice of authenticating copies of documents by means of a certificate from the document's custodian stating that the copy is accurate." *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2546-2547 (2009). This particular emphasis on an ESI document's hash value **ensures the integrity of the copy**, and helps protect against a case being decided on ESI which is not a true and correct copy of the original

but instead reflects modified data. Fed. R. Evid. 902, *Committee Notes on Rules—2017 Amendment* ("If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical."); *Melendez-Diaz*, 129 S.Ct. at 2546-2547.

        3. DEFENDANT DOES NOT PROVIDE A METHOD FOR AUTHENTICATING THE ACCURACY OF THE DATA CONTAINED IN DEFENDANT'S PROFFERED ESI DOCUMENT.

As Exhibit B to Defendant's Response, Defendant proffers a printout of an electronic report, Ecf 20, pp. 20-25, allegedly showing Plaintiff's "interactions with the onboarding packet", Ecf 20, p. 5, ¶4. And Defendant's proffered testimony states that this report is "[a] true and correct copy of the report". Ecf 20, p. 5, ¶4. This testimony authenticates the proffered report as a report. Fed. R. Evid. 901. But this authentication does not extend to the electronic date contained in the report.

**Rule 901** provides a series of methods for the identification of a document -- or showing that a document "is what the proponent claims it is" -- but **does not provide a method for authenticating the accuracy of the data contained in an ESI document**. Fed. R. Evid. 901(b). Given the inherent ability to edit data in ESI files, such files present a unique challenge for authentication, as opposed to physical documents. Rule 901 provides a route through which a party can identify a document, but it is Rule 902 that authenticates the accuracy of the data contained within the identified document. Fed. R. Evid. 902, *Committee Notes on Rules—2017 Amendment*.

While claiming to comply with the Federal Rules of Evidence, Defendant nowhere provides a certification from a purported "qualified person" that the hash values for Defendant's records of Plaintiff's "interactions with the onboarding packet" are identical to Defendant's

original ESI documents. Without this certification, Defendant is unable to certify its records are identical, true, and correct copies of Defendant's ESI documents which Defendant electronically stores in Defendant's computer system. Fed. R. Evid. 902, *Committee Notes on Rules—2017 Amendment*; *Melendez-Diaz*, 129 S.Ct. at 2546-2547.

Defendant presents no testimony on how Defendant's computer system collected, recorded, or maintained the information concerning Plaintiff's alleged "interactions with the onboarding packet". The testimony Defendant proffers merely states that the proffered record is a record. Ecf 20, p. 5, ¶4. But **the testimony does not state whether the data in the record was modified** or not, **or how many people had access to the ESI records**.

Some might ask why Defendant has never attempted to authenticate the records pursuant to Rule 902. Why is Defendant so resistant to comparing the hash values for Defendant's report to Defendant's original ESI documents? Why has Defendant put so little effort to authenticate the proffered evidence to ensure the integrity of the data on which Defendant asks this Court to deny Plaintiff her day in court and compel the Parties to arbitration? Without the required certification of the hash values under Rule 902, Defendant cannot certify that the proffered copies are identical to their original ESI, or that the proffered documents are an accurate result of Defendant's computer system's process. Fed. R. Evid. 902(13)-(14); Fed. R. Evid. 902, *Committee Notes on Rules—2017 Amendment.*

II.   THE COURT SHOULD HOLD A TRIAL ON DEFENDANT'S MOTION TO COMPEL ARBITRATION BECAUSE THERE IS A FACTUAL DISPUTE REGARDING THE FORMATION OR VALIDITY OF DEFENDANT'S ALLEGED ARBITRATION AGREEMENT.

If the Court does not outright deny Defendant's Motion to Compel Arbitration, then Plaintiff would be entitled to have Defendant's Motion to Compel Arbitration decided through an evidentiary hearing, or a trial if Plaintiff requests it, because there is a factual dispute

regarding the formation or validity of Defendant's alleged arbitration agreement. 9 U.S.C. §4; *T & R Enters. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992); *see also ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 311 (5th Cir. 1999) (citing *Howell Crude Oil Co. v. Tana Oil & Gas Corp.*, 860 S.W.2d 634, 639 (Tex. App. - Corpus Christi 1993, no writ)). Plaintiff requested a jury trial in the instant case. "Plaintiff's Original Complaint and Jury Demand", Ecf 1, pp. 7-8, ¶43 ("Plaintiff requests that this case be decided by a jury as allowed by Federal Rule of Civil Procedure 38."). And Plaintiff also specifically requested that the Court decide this factual dispute -- whether Plaintiff signed Defendant's alleged arbitration agreement -- through a jury trial. "Plaintiff's Sur-Reply to Defendant's Reply In Support of its Motion to Compel Arbitration of Plaintiff's Claims", Ecf 10, pp. 8-9, §III. It is Plaintiff's right under the law to have this factual dispute be decided through a trial. 9 U.S.C. §4; *T & R Enters.*, 613 F.2d at 1278; *Dillard*, 961 F.2d at 1154; *see also ASW Allstate Painting & Const. Co., Inc.*, 188 F.3d at 311 (citing *Howell Crude Oil Co.*, 860 S.W.2d at 639).

Thus, if the Court does not deny Defendant's Motion, the Court should hold a jury trial on Defendant's Motion to Compel Arbitration because there is a factual dispute regarding the formation or validity of Defendant's alleged arbitration agreement, and Plaintiff requests the dispute be decided through a trial. 9 U.S.C. §4; *T & R Enters.*, 613 F.2d at 1278; *Dillard*, 961 F.2d at 1154; *see also ASW Allstate Painting & Const. Co., Inc.*, 188 F.3d at 311 (citing *Howell Crude Oil Co.*, 860 S.W.2d at 639).

III.   CONCLUSION AND PRAYER.

It is "a threshold matter" that the party seeking to compel arbitration must first meet its burden of establishing the existence of a valid arbitration agreement. *Rachal v. Reitz*, 403 S.W.3d

840, 843 (Tex. 2013). And it is for this reason that the Court ordered Defendant to produce the August 2024 email Defendant alleges to have sent to Plaintiff, Ecf 19, p. 2, Question No. D1, and to properly authenticate any documents submitted in response to the Court's questions, Ecf 19, p. 1. Defendant did neither.

The law is that Plaintiff is entitled to a trial to decide the factual dispute regarding whether Plaintiff signed Defendant's alleged arbitration agreement. 9 U.S.C. §4; *T & R Enters.*, 613 F.2d at 1278; *Dillard*, 961 F.2d at 1154; *see also ASW Allstate Painting & Const. Co., Inc.*, 188 F.3d at 311 (citing *Howell Crude Oil Co.*, 860 S.W.2d at 639). And the Court should conduct such a trial because the law requires a trial when Plaintiff presents evidence that Plaintiff did not sign Defendant's alleged arbitration agreement, which Plaintiff did. Ecf 5; Ecf 10; Ecf 21.

Plaintiff asks the Court to conduct a jury trial on Defendant's Motion to Compel Arbitration, and, following the trial, enter a judgment denying Defendant's Motion in its entirety because that is the correct outcome under the applicable law.

SIGNED on January 13, 2026.

                                              Respectfully submitted,

                                              **Chavez Law Firm**
                                              2101 N. Stanton Street
                                              El Paso, Texas 79902
                                              (915) 351-7772

By: _____
           Enrique Chavez, Jr., State Bar No. 24001873
           enriquechavezjr@chavezlawpc.com
           Michael R. Anderson, State Bar No. 24087103
           manderson@chavezlawpc.com
           Michael M. Osterberg, State Bar No. 24108991
           mikeosterberg@chavezlawpc.com
           *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

The foregoing instrument was e-filed and e-served on all counsel through the Court's efiling system. Accordingly, the Federal Rules of Civil Procedure do not require a Certificate of Service. Fed. R. Civ. P. 5(d)(1)(B) ("No certificate of service is required when a paper is served by filing it with the court's electronic-filing system.").